## THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 20-20032-CR-01-DDC ) |
| COTY MEWES, | ) ) ) |
| Defendant. | ) ) |

### SENTENCING MEMORANDUM

**COMES NOW** the defendant, Coty Mewes, by and through his attorney of record, Gary D. Stone, and hereby respectfully requests this honorable court impose a sentence of eight months imprisonment.

To begin, the undersigned apologizes to the court for the late filing of this memorandum. The final PSR was filed only five days ago and despite the United States Attorney's substantial efforts and due diligence, the government has still not indicated its final position regarding Mr. Mewes' objections to the PSR.

With all of that in mind, the defendant would ask this court to consider all relevant factors to determine whether the recommended sentence for this particular defendant is sufficient, *but not greater than necessary*, to comply with the statutory instructions set forth in 18 U.S.C. §3553(a).

Considering the nature and circumstances of the offense and the history and characteristics of this particular defendant, Coty Mewes asserts a sentence of eight months will reflect seriousness of the offense; promote respect for the law, and to provide just punishment.

A.    **<u>FACTS</u>**

On April 20, 2018, Coty C. Mewes was sentenced to 36 months' imprisonment in the Bureau of Prisons (BOP), by the United States District Court for the Western District of Missouri, Case number 4:17-CR-00253-BP(1), upon conviction for a Felon in Possession of a Firearm offense, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

On January 14, 2020, the BOP transferred the defendant to the Leavenworth, Kansas Grossman Residential Reentry Center (RRC), an institutional facility in which the defendant was lawfully confined at the direction of the Attorney General. The defendant remained in BOP custody at the RRC and was scheduled to be released on May 7, 2020.

On March 19, 2020, Coty Mewes left the facility and did not return. The BOP therefore placed him on escape status. On March 20, 2020, the United States Marshals Service received an escape notification from the BOP and initiated apprehension attempts. On March 26, 2020 (only 7 days later), Kansas City, Missouri Police Department officers arrested the defendant. He was charged in the instant case shortly thereafter.

On July 13, 2020, the defendant appeared with counsel and entered a plea of guilty as charged. As part of the plea agreement, the government agreed Mr. Mewes was free to request a downward departure and/or a variance from the otherwise advisory guideline sentence. The government also agreed to recommend the low end of the appropriate sentencing box as determined by the court.

Mr. Mewes has objected to the presentence report because he believes he is entitled to a four level reduction pursuant to 2P1.1(b)(3). Even today, the government has not indicated its position with regards to this objection. It is believed the government will argue Mr. Mewes is not entitled to this four point reduction and will request a sentence of 18 months be ordered by the court as reflected in the PSR.

2

Mr. Mewes will argue to the court a sentence of eight months is an appropriate disposition of the case because it brings certainty to the sentencing process and assures that the defendant and the government will benefit from the bargain they have struck. If the Court follows the recommended sentence, the parties assert the interests of justice are served by the sentence, thereby assuring that the sentence is consistent with the sentencing factors of 18 U.S.C. § 3553(a).

B.  **ARGUMENT AND AUTHORITIES**

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts should engage in a three-step approach to federal sentencing:

First, the court should apply the sentencing guidelines to establish the sentencing guideline range. *Gall v. United States*, 552 U.S. 38 (2007) (stating that the district court should begin all sentencing proceedings by correctly calculating the applicable guideline range, and that "to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark").

Second, the court should determine whether a departure is consistent with the guidelines. *See, e.g.*, *United States v. McBride*, 434 F.3d 470 (6th Cir. 2006) (holding that guideline departures are still a relevant consideration for determining the appropriate guideline sentence); *United States v. Jordi*, 418 F.3d 1212 (11th Cir. 2005) (stating that "the application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered").

Third, the court should determine whether a variance (a sentence outside the advisory guideline system) is warranted under the authority of 18 U.S.C. § 3553(a).

The appellate court engages in a two-step process on review. The appellate court "first ensure[s] that the district court committed no significant procedural error, such as failing to

calculate (or improperly calculating) the Guidelines range . . . [and] then consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38 (2007).

### *Step 1 – Applying the Sentencing Guidelines to Establish the Guidelines Range*

The three-step post-*Booker* sentencing process first requires a district court to properly calculate and consider the guidelines when sentencing.  In *Booker*, the U.S. Supreme Court held the sentencing guidelines are advisory only.  The guidelines should be used as a starting point in sentencing and as the initial benchmark.

In the case against Coty Mewes, the Presentence Report (PSR) currently lists the total offense level at 11, criminal history category IV, or 18-24 months imprisonment.  Mr. Mewes has objected to the PSR and argued pursuant to USSG 2P1.1(b)(3), the correct offense level should be 7, criminal history category IV, or 8-14 months imprisonment.

For purposes of this memorandum, the defendant will assume the court will overrule his objection and adopt the recommendations as contained in the PSR.  The starting point for the court's analysis would therefore be 18-24 months imprisonment.

### *Step 2 – Departure Factors*

After determining the guideline range, the district court should refer to the Guidelines Manual and consider whether the case warrants a departure.  As mentioned above, Mr. Mewes will be requesting this court sentence him to eight months imprisonment based on his argument he should receive a four point reduction pursuant to USSG 2P1.1.  Mewes believes this is the correct guidelines level.  Because the government agreed to recommend the low end of the appropriate sentencing box, he believes a sentence of eight months is appropriate.

Mewes will not be requesting any specific departure as listed in USSG Chapter 5, but will set out the rationale for the requested sentence as part of a variance request (assuming this court overrules his objection and calculates 18-24 months as the appropriate guidelines sentence).

### *Step 3 – §3553 Factors - Variances*

The third and final post-*Booker* step requires the court to consider a variance, and the factors contained in 18 U.S.C. § 3553(a). A "variance" – i.e., a sentence outside the guideline range other than as provided for in the Guidelines Manual – is considered only after departures have been considered. Courts have held that variances are not subject to the guideline analysis for departures — in some cases, a circumstance prohibited for departure may be considered as a basis for a variance. *See, e.g.*, *United States v. Chase*, 560 F.3d 828 (8th Cir.2009).

Provisions of 18 U.S.C. §3553, guide the court in determining and imposing an appropriate sentence. An appropriate sentence is one, considering the nature and circumstances of the offense and the history and characteristics of the defendant, that is "sufficient, but not greater than necessary to comply with the purposes of sentencing." §3553(a); *Gall*, 552 U.S. at 50. It is not an abuse of discretion for this court to impose a sentence below the guidelines range when the § 3553 factors indicate that a sentence within the guidelines would be "greater than necessary." *Kimbrough*, 552, U.S. at 110.

Coty Mewes has objected to the guidelines level calculated in his presentence report. If the court overrules this objection, he requests this court grant him a downward variance in this matter to eight months imprisonment. If the court sustains his objection, Mr. Mewes asks this court to impose the mitigated sentence of eight months as it will be recommended by all parties.

Mewes submits a sentence higher than eight months would be greater than necessary to comply with the purposes of the sentencing guidelines. A sentence of eight months would be reasonable considering the statutory factors which relate to the need for the sentence: (1) to

reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from future crimes by Coty Mewes; and (4) to provide Mr. Mewes with appropriate correctional treatment.

***Considering the Nature and Circumstances of the Offense and the History and Characteristics of the Defendant, a Sentence of Eight Months is Sufficient, but not Greater than Necessary to Comply with the Purposes of the Sentencing Guidelines***

Mr. Mewes was finishing up a 36 month sentence with the Bureau of Prisons. He had only a little under two months left to serve. He was in the half-way house with little security and supervision. At the beginning of March, the Covid-19 pandemic swept the nation. Like many, Mr. Mewes went into panic mode. He left the facility and made the wrong decision to stay away.

Coty was and is very frightened of uncertainty and change. He feels most secure when he is in a routine and knows a system. When the pandemic hit, Coty's mind was tossed into chaos.

As a child, Coty was repeatedly abused. The PSR confirms he spent significant periods of time within juvenile centers and group homes while growing up, in addition to being placed with different foster families. Records indicate Coty displayed major adjustment issues when placed with foster families. He was neglected and physically abused. He was molested at various ages at group and foster homes. Each time he was sent to another housing location, Coty had issues coping.

Coty has also been treated for mental health and behavioral issues his entire life. He has been diagnosed with attention deficit hyperactivity disorder, post-traumatic stress disorder (PTSD), adjustment disorder, pervasive developmental disorder, major depressive disorder, bipolar mood disorder, and Tourette's syndrome (and several other conditions).

While at the Grossman center, Coty was doing as well as could be expected reintegrating into society. He knew his place and was starting to feel quite comfortable with the planned transition. The freedom he was starting to enjoy was stopped almost immediately and he felt,

through the nation's quarantine, he was taking a step back.  His insecurities took hold and rational thinking was out the door.

Coty's grandfather Chuck is on his death bed.  His grandmother Joy also suffers from dementia and has been hospitalized.  While they are still living now, the time they have left is unknown.  When the pandemic took form, Coty didn't know if he would ever be able to see his grandparents again.  He also has children and a new fiancé (Ashley).  He wants nothing more than to see his family and play an important role in their lives.

The abuse Coty suffered as a child will scar him forever.  Coty suffers from PTSD.  He has bad dreams and wakes up nightly in deep sweats.  He is easily spooked by loud noises and his heart races.  Coty always feels as if he is looking over his shoulder – that someone is after him.  This condition will ultimately make whatever time he serves in prison harder than that of a normal person.  The court should consider this when imposing punishment.

Eight months imprisonment is an appropriate disposition in this matter.  Eight months, considering the fact Coty has already been in custody (excluding one week) for the past three years, is significant.   This period of time will give Coty time to think about the wrong choices he made.

When his custody sentence concludes, he will also be placed on supervised release for at least three years.  Supervised release will provide Coty the opportunity to address his mental health issues.  It also keeps him monitored with additional punishment lurking if he should not abide by all of the conditions of his release.  Treatment, not imprisonment, will improve this defendant's mental state.  Through treatment, Coty will be much less likely to reoffend.

The court should recognize "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).  For Mewes, an eight month sentence will justly serve as ample punishment.   This was a case in which he was already being reintegrated

into society. He was in a half-way house and was doing well. Covid-19 hit and everything changed.

This man has already been deterred from committing future crimes. The past 36 plus months is custody has been a nightmare. Coty has lost contact with all of his friends and family. He lost his opportunity at finding gainful employment, and he was removed from any chance at receiving meaningful treatment. A sentence of eight months is more than enough to deter Mr. Mewes from any future criminal conduct.

### C. **CONCLUSION**

The defendant recognizes the seriousness of his offense. He also knows he needs treatment. Coty cannot obtain appropriate mental health treatment if he is incarcerated for a long period of time. Incarceration exacerbates his condition(s) and does exactly the opposite of rehabilitation.

Mr. Mewes argues his appropriate guidelines sentence is 8-14 months. Mewes' PSR lists his guidelines range at 18-24 months because of the suggestion he may have committed a crime while on escape status. The government has agreed to recommend the mitigated number in the appropriate sentencing guidelines range. As such, the government will either recommend 8 or 18 months to the court as an appropriate disposition.

Coty recognizes reliable evidence which can include hearsay is admissible at sentencing. He has argued to the court however that all evidence he committed a crime is unreliable and should not be considered.

Finally, as of the date of the filing of this memorandum, the government has still not indicated its final position as to the defendant's objection. The final version of the PSR was filed only five days ago (and 8 days prior to sentencing). The government states: "When the

additional report is obtained, the government will inform the Probation Office and the defendant's counsel of its final position regarding the defendant's objection." AUSA Krug emailed last week he would "have the report prior to sentencing." Again, no objection to the requested reduction was mentioned.

The sentencing guidelines demand the need for the sentence to promote respect for the law and provide just punishment. These same goals instruct the court not to impose a sentence which is greater than necessary to promote offender reformation. Whether by way of a variance or though the court finding that 8-14 months is the appropriate sentencing range, Mr. Mewes submits eight months is an appropriate and just sentence in this case.

Respectfully submitted,

/s/ Gary D. Stone

_____
GARY D. STONE
753 State Avenue, Suite 388
Kansas City, Kansas 66101
(913) 281-6601
(913) 281-6602 (Fax)
stonelawoffice@sbcglobal.net
Attorney for Defendant Mewes

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2020, I electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following attorney(s) of record:

Trent Krug
Assistant United States Attorney

/s/ Gary D. Stone

_____
GARY D. STONE
Attorney for Defendant Mewes